IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ARLENE COOK )
)
v. ) NO. 3-12-0749
) JUDGE CAMPBELL
THE HARTFORD, et al. )

MEMORANDUM

Pending before the Court are Defendants' Motion for Judgment on the Record (Docket No. 44) and Plaintiff's Motion for Entry of Judgment (Docket No. 46). For the reasons stated herein, Defendants' Motion is GRANTED, and Plaintiff's Motion is DENIED.

FACTS

Plaintiff was employed as an "Administrative Assistant III" by Vanderbilt University and was covered by a group insurance policy issued by Defendant Hartford Life and Accident Insurance Company ("Hartford") which insured the long-term disability component of the employee welfare benefit plan established and maintained by Vanderbilt. The policy provides that "disability" or "disabled" means:

> 1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
> 2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
> 3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

Administrative Record ("AR") (Docket No. 43), p. 324.

The policy also provides the conditions under which benefits will terminate:

We will terminate benefit payments on the first to occur of:

1. the date You are no longer Disabled as defined;
2. the date You fail to furnish Proof of Loss when requested by us;
. . .
7. the date no further benefits are payable under any provision in this plan that limits benefits duration; or
. . .
9. the date You refuse to receive recommended treatment that is generally acknowledged by physicians to cure, correct or limit the disabling condition.

AR, p. 311.

With regard to mental illness, the policy provides:

If You are Disabled because of:

1. Mental Illness that results from any cause;
2. any condition that may result from Mental Illness;
. . .
then, subject to all other Policy provisions, benefits will be payable:
1. only for so long as You are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
2. when You are not so confined, a total of 24 months for all such Disabilities during Your lifetime.

AR, p. 311.

Plaintiff became unable to work in February of 2009 because of pain related to several medical conditions including rheumatoid arthritis, depression and forgetfulness. She submitted a claim to Defendant Hartford for long-term disability ("LTD") benefits in July of 2009. On December 14, 2009, Defendants advised Plaintiff that her claim for LTD benefits had been approved. AR, pp. 163-166. In other words, Hartford found Plaintiff unable to perform her own occupation.

Defendants advised Plaintiff that benefit payments would continue, subject to the terms and limitations of the policy, while she met the policy definition of Disability. AR, p. 163. The

notification letter also advised Plaintiff that as of August 2, 2011, "Disabled" would mean unable to perform one or more of the Essential Duties of Any Occupation. AR, p. 164. Defendants paid benefits under the Own-Occupation period of her policy from August 2, 2009, through August 1, 2011.

In early 2011, Defendants began an investigation into Plaintiff's eligibility for LTD benefits beyond August 2, 2011. In an updated questionnaire, Plaintiff listed her medical conditions as depression,[1] limited use of hands, arms and legs, rheumatoid arthritis, fibromyalgia, and memory problems. AR, p. 367.

On March 11, 2011, Plaintiff's treating rheumatologist, Dr. Fuchs, submitted a functionality report, listing Plaintiff's primary diagnosis as rheumatoid arthritis and indicating that Plaintiff could sit for 6.5 hours a day (no longer than 2 hours at a time), stand for 1 hour per day (no longer than 6 minutes at a time) and walk for 30 minutes a day (no longer than 15 minutes at a time). AR, p. 374. He restricted Plaintiff's lifting, reaching and bending abilities to lifting no more than ten pounds, only occasionally bending, never kneeling or crouching, and reaching occasionally (above shoulder and at desk level) and frequently (at below desk level). AR, p. 374.

On March 29, 2011, Hartford performed an Employability Analysis based upon Plaintiff's employment and education history, as well as the restrictions and limitations listed in Dr. Fuch's functionality report. AR, pp. 376-388. Defendants' Analysis identified four sedentary occupations

---

[1] Any benefits for disability based upon mental health issues terminated after 24 months, regardless, by the terms of the policy set forth above. Therefore, the Court need not discuss the factual issues pertaining to Plaintiff's mental health claim. In any case, Plaintiff appears to have abandoned the mental health benefits claim, since she fails to argue it in her briefs.

in the national economy for which Plaintiff was capable based on her education[2], work experience and physical abilities. AR, p. 378. These positions did not require physical abilities beyond the capabilities represented by Dr. Fuchs and also met Plaintiff's earning requirements. AR, p. 378.

Thereafter, Plaintiff was denied LTD benefits under the "Any Occupation" provision, and that denial is the subject of this dispute. Defendants' June 29, 2011 letter reflects a review of Plaintiff's work history, medical information, employability analysis information, education, training and experience. Defendants determined that Plaintiff was able to perform work with the restrictions and limitations set forth by Dr. Fuchs. AR, p.135.

Specifically, Defendants used a vocational rehabilitation clinical case manager to perform an employability analysis which showed a number of occupations for which Plaintiff is qualified within her physical capabilities. *Id.* Defendants determined that while Plaintiff's condition may keep her from doing any of her past work, her condition does not prevent her from doing other jobs which are less demanding. AR, p. 347. Defendants advised Plaintiff that she could perfect her claim by providing additional information or she could appeal the decision without providing more information. AR, p. 136.

Plaintiff appealed Hartford's termination of her LTD benefits by letter dated August 27, 2011. AR, p. 235. Defendants assert that, in reviewing Plaintiff's appeal, they considered Plaintiff's statement in that letter that just "trying to get out of bed on most days is impossible and I have to rest most of the day" (AR, p. 236), but they also considered Plaintiff's medical record from the Vanderbilt Sleep Clinic which indicated, on June 27, 2011, that Plaintiff "frequently goes out of

---

[2] Plaintiff has an Associate's Degree in accounting and computer programming and a Bachelor's Degree in business management. AR, p. 363.

town to visit a friend." AR, p. 265. Those records also suggest that Plaintiff was away from home more than she was at home. *Id*.

Plaintiff, on appeal, submitted a letter from Dr. Fuchs, dated August 16, 2011, in which he stated that Plaintiff had progressive problems with her functional status over time. He also stated that Plaintiff could not do sustained weight bearing or walking due to knee pain, and her hand function was poor (related to her arthritis) because she has greatly reduced grip strength, poor dexterity and pain with use. Dr. Fuchs concluded: "I do not see that she can be functional in the workplace with current functional status." AR, p. 239.

Plaintiff also submitted a Physical Capacity Evaluation from Dr. Fuchs, completed on June 7, 2011. That record indicates that Plaintiff could stand/walk less than one hour per day and could sit six or more hours per day. AR, p. 227. It reports that Plaintiff could use her hands adequately for simple grasping, but not for pushing and pulling or fine manipulation. *Id*. Dr. Fuchs reported that Plaintiff could not use her feet for repetitive motions as in operating foot controls and could lift/carry only up to ten pounds occasionally. AR, pp. 227-28. He stated that Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl. She could reach above shoulder level occasionally. AR, p. 228. Although he noted moderate restriction of being around moving machinery, he found no restrictions for driving automobile equipment. *Id*. Dr. Fuchs reported that Plaintiff suffered from pain disabling to the extent that it would prevent her from working full time at even a sedentary position. He also reported that Plaintiff had deficiencies of attention and concentration due to pain that would result in a failure to complete tasks in a timely manner. AR, p. 229. He opined that Plaintiff's pain was "moderate," defined as "constitutes a significant handicap with sustained attention and concentration would eliminate skilled work tasks." *Id*.

5

Defendants referred Plaintiff's file to an independent medical review service to be reviewed by a rheumatologist. Dr. Payne, board certified in rheumatology, concluded that Plaintiff would be expected to be capable of unrestricted work from August 2, 2011 forward. He found that, although Plaintiff's medical file documented the presence of rheumatoid arthritis, the file did not contain any imaging or laboratory date nor report any historical features of destructive rheumatoid disease. AR, pp. 221-22.

On October 18, 2011, Defendants denied Plaintiff's appeal, finding that Plaintiff was not disabled as defined in her policy and that "the overall medical documentation fails to provide evidence of physical, cognitive or psychiatric impairment so severe as to preclude you from performing any occupation as defined in the Policy." AR, p. 112.

STANDARD OF REVIEW

When a benefits plan gives the plan administrator discretionary authority to interpret the terms of the plan and to determine benefits, the "arbitrary and capricious" standard of review is appropriate. *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). The parties agree that the "arbitrary and capricious" standard applies in this case. Although that standard is deferential, it is not a rubberstamp for the administrator's determination. *Elliott*, 473 F.3d at 617.

An ERISA plan administrator's decision on eligibility for benefits is not arbitrary and capricious if it is "rational in light of the plan's provisions." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991). Under that standard, the Court upholds the administrator's decision if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. *Elliott*, 473 F.3d at 617. The question in any given disability case on an

"arbitrary and capricious" review is whether a plan can offer a reasoned explanation, based on the evidence, for its judgment that a claimant was not "disabled" within the plan's terms. *Id*.

When the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, as is the case here, an inherent conflict of interest arises. *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). In close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits. *Id*.[3]

## DISCUSSION

Applying this deferential standard, the Court finds that the decision of Defendants to deny LTD benefits after August 2, 2011, was not arbitrary or capricious. The decision is rational in light of Plaintiff's medical records. The Administrative Record reflects that Defendants considered all medical information submitted by the Plaintiff and encouraged her to submit additional information on at least one occasion. This is not a case of the administrator ignoring evidence, refusing to consider physicians' opinions, or failing to explain the basis for its decision. Defendants have offered a reasoned explanation for the outcome. Requiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable. *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 166 (6th Cir. 2007). The Court finds that Defendants reasonably relied upon Plaintiff's physician's characterizations of her pain and her ability to perform daily tasks, as well as the opinions of the independent medical reviewers.

## CONCLUSION

---

[3] Here, Plaintiff has presented no specific evidence that indicates Hartford was improperly influenced by this inherent conflict of interest. *See, e.g., Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 507 (6th Cir. 2005).

For these reasons, Defendants' Motion for Judgment on the Record is GRANTED, and Plaintiff's Motion for Entry of Judgment is DENIED. The decision of the Defendants to terminate long-term disability benefits is affirmed.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE